UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SCOTT ERIC LUELLEN,

                Plaintiff,

        v.

JOE DEAN HODGE,

                Defendant.
_____

**DECISION & ORDER**

11-CV-6144P

## **INTRODUCTION**

On March 1, 2011, plaintiff Scott Eric Luellen ("Luellen") filed this action against his ex-father-in-law, Joe Dean Hodge ("Hodge"), asserting civil RICO claims under Title 18 U.S.C. § 1962 and various New York state law claims. (Docket # 1). Pursuant to 28 U.S.C. § 636(c), the parties have consented to have a United States magistrate judge conduct all further proceedings in this case, including the entry of final judgment. (Docket # 20).

Currently pending before the Court is Luellen's motion for leave to file an amended complaint. (Docket # 112). Also pending before the Court is Luellen's motion for sanctions (Docket # 117) and his motion to strike (Docket # 125). For the reasons discussed below, Luellen's motion to amend (Docket # 112), his motion for sanctions (Docket # 117) and his motion to strike (Docket # 125) are denied.

I.   **MOTION TO AMEND**

   A.   **Factual Background**

The allegations of the original complaint arise out of Luellen's divorce proceedings from Hodge's daughter, Tracey Luellen Hodge ("Tracey Hodge"), which commenced in 2003 and culminated in a divorce decree in January 2005. (Docket # 1 at ¶¶ 16, 24). The opening paragraph of his complaint describes the instant litigation as a case "about a woman scorned [who] fraudulently induc[ed] a $1.3 million financial settlement by conspiring with her father to hide assets." (Docket # 1 (Introduction)). According to the complaint, during the pendency of the divorce proceedings, Tracey Hodge and Hodge colluded to hide her assets in bank accounts opened in Hodge's name. (*Id.* at ¶¶ 31-40). Specifically, Luellen alleges that sometime prior to 2004, Hodge opened at least one, and possibly two, bank accounts in his own name. (*Id.* at ¶¶ 32, 40). Although the accounts were held in Hodge's name, Tracey Hodge was a signatory on the accounts. (*Id.* at ¶ 32). According to the complaint, Tracey Hodge hid assets in these accounts during the divorce proceedings. (*Id.* at ¶¶ 35-37).

Luellen alleges that during the divorce proceedings Tracey Hodge was ordered to disclose all of her assets to Luellen and she attested under oath that she had done so. (*Id.* at ¶¶ 20-23). Luellen contends that such representations were false because she never disclosed the existence of the accounts in her father's name, nor the assets that she had secreted in those accounts. (*Id.* at ¶¶ 35-36). According to Luellen, he relied upon Tracey Hodge's representation that she fully had disclosed her assets when he agreed to the terms of the divorce settlement. (*Id.* at ¶¶ 24-27). He further alleges that he did not discover the existence of the accounts until April 2007. (*Id.* at ¶ 31). Thus, Luellen maintains, he was fraudulently induced to enter into the

2

divorce settlement. (*Id.* at ¶¶ 24, 27). Based upon these factual allegations, Luellen's original complaint purports to assert civil RICO claims against Hodge arising from his conduct in opening the bank accounts in his name for Tracey Hodge's use. (*Id.* at ¶¶ 41-70). In addition, the original complaint asserts several causes of action against Hodge arising under New York state law. (*Id.* at ¶¶ 71-115).

Since the commencement of this case, the parties have engaged in substantial pretrial proceedings, including motions and discovery. Among other motions, the parties have filed applications for temporary restraining orders, default judgment, partial summary judgment and dismissal. (*See*, *e.g.*, Docket ## 13, 16, 31, 45, 57). The parties conducted the bulk of the discovery during the latter part of 2011 and the beginning of 2012. (*See*, *e.g.*, Docket ## 22, 29, 30, 33, 47, 48, 49, 56, 58, 62). The contentious discovery process has spawned motions to compel, motions for non-party subpoenas, motions for protective orders and motions seeking discovery sanctions. (*See*, *e.g.*, Docket ## 41, 60, 69, 97, 109, 117, 131).

This Court entered a scheduling order governing this litigation on October 24, 2011. (Docket # 26). In relevant part, that order required that motions to amend the pleadings or join parties be made on or before February 15, 2012 and fact discovery be completed by May 1, 2012. (*Id.* at ¶¶ 1, 5). On January 24, 2012, Luellen sought a ninety-day extension of the deadlines contained in the scheduling order. (Docket # 72). Luellen contended the extension was necessary because delays in the resolution of discovery disputes had "render[ed] it impossible to make an informed decision as to any amended complaint and/or additional parties by February 15, 2012." (*Id.* at ¶ 11). Hodge opposed the request. (Docket # 74). Although his original motion remained pending, on April 15, 2012, Luellen again requested an extension of

3

the scheduling order. (Docket # 84). Hodge likewise opposed the request. (Docket # 86). Finally, on May 6, 2012, Luellen filed a contested request for an extension of the scheduling order, including a request to extend the deadline to amend and to add parties. (Docket ## 87, 92).

On June 14, 2012, the Court granted Luellen's extension requests and entered an amended scheduling order. (Docket ## 97, 98). In relevant part, the deadline to amend the pleadings or to add parties was extended until August 17, 2012. (Docket # 98 at ¶ 1). On approximately August 10, 2012, Luellen sent a letter to chambers enclosing a proposed amended complaint and requesting leave to amend the complaint. (Docket # 112). The letter request was docketed as a motion seeking leave to amend the complaint, which defendant has opposed. (Docket ## 113, 115).

The proposed amended complaint adds Tracey Hodge as a defendant to the action and asserts numerous Virginia state law claims against her, primarily fraud and fraudulent conveyance claims. (Docket # 112-1 at ¶¶ 76-151). In addition, the proposed amended complaint withdraws the civil RICO and associated state law claims previously asserted against Hodge and replaces them with Virginia and New York state law claims for transferee liability and one New York state law claim for aiding and abetting fraud. (*Id.* at ¶¶ 152-84). Finally, the proposed amended complaint adds factual allegations regarding Tracey Hodge's hidden assets, such as the identification of three specific bank accounts and particular transactions. (*See*, *e.g.*, *id.* at ¶¶ 18-21, 27, 29, 34, 47, 51, 59, 64, 66, 70, 109).

Although he did not submit an affidavit in support of his motion outlining the basis for the relief that he seeks, Luellen's cover letter stated that the proposed amendments are

4

warranted because he learned information in discovery which "merits additional and alternative theories of recovery and justice from two parties." (Docket # 112). In addition, several of the factual allegations contained in the proposed amended complaint assert that Luellen first learned of the existence of two of the bank accounts and particular transactions in October 2011, during discovery in this litigation. (Docket # 112-1 at ¶¶ 67, 69, 70-71, 127).

Hodge opposes the motion to amend on three grounds. (Docket # 115). First, Hodge contends that Luellen failed to file a formal motion seeking leave to amend prior to the expiration of the August 17, 2012 deadline. (*Id.* at ¶¶ 2-3). Next, Hodge contends that Luellen has failed to show good cause for his undue delay in seeking leave to amend. (*Id.* at ¶¶ 12-15). According to Hodge, Luellen's statement that he had learned information during discovery that justified the amendment is conclusory and insufficient to support the requested modifications. (*Id.*). Hodge contends that Luellen's orginial complaint contained allegations that Tracey Hodge was involved in a conspiracy to conceal her assets, but maintains that Luellen made a strategic choice not to include her as a defendant in the original complaint. (*Id.* at ¶ 15). Thus, Hodge argues, no basis exists to allow Luellen to add her to the action at this late stage of the litigation. (*Id.*).

Finally, Hodge contends that he would be unduly prejudiced if Luellen were permitted to amend the complaint. According to Hodge, Luellen's proposed amended complaint would drastically alter the nature of the action from a civil RICO case arising out of the divorce proceedings to a state law case involving transferee liability for countless post-divorce transactions that occurred over an eight-year time period. (Docket # 115 at ¶¶ 18, 25). According to Hodge, such amendments, if permitted, could require extensive additional

5

discovery and significantly delay resolution of this case. (*Id.* at ¶¶ 26-27). In addition, the new causes of action will require new legal analysis and may even require retention of local counsel to address issues of Virginia law. (*Id.* at ¶ 27). Finally, Hodge asserts that he has expended substantial effort analyzing the civil RICO claims and that he is in the process of preparing a summary judgment motion.[1] (*Id.* at ¶¶ 27-29).

In reply, Luellen contends that he did not delay in seeking leave to amend because he did not learn of the specific bank accounts until discovery in this action. (Docket # 118 at 2). Likewise, Luellen maintains that it was during discovery that he first learned that Tracey Hodge had agreed to satisfy a marital debt that he had assumed in the divorce decree in the event that he defaulted. (*Id.*). Finally, Luellen asserts that it was only through discovery in this litigation that he learned of the scope of the financial transactions conducted by Tracey Hodge in the undisclosed bank accounts. (*Id.*). Luellen maintains that, under the liberal standard governing amendments, he should be entitled to amend his complaint at this stage of the litigation. Finally, Luellen contends that his letter request for leave to amend should be treated as a formal motion which was timely filed. (*Id.* at 3-5).

### B. <u>Discussion</u>

Rule 15(a) of the Federal Rules of Civil Procedure provides that once the time for amending a pleading as of right has expired, a party may request leave of the court to amend, which shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a). If the

---

[1] At the time Hodge filed his opposition papers, the Court's scheduling order required dispositive motions to be filed on or before November 16, 2012. (Docket # 98). On December 3, 2012, the Court extended that deadline to require dispositive motions to be filed forty-five days after the filing of this Decision and Order. (Docket # 126).

6

underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *See United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989). When the proposed amendments seek to add additional parties, the propriety of the proposed amendment is governed by Rule 21 of the Federal Rules of Civil Procedure which grants the Court broad discretion to permit the addition or severance of parties from the litigation.[2] *See* Fed. R. Civ. P. 21 ("[o]n motion or on its own, the court may at any time, on just terms, add or drop a party"); *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 79 (E.D.N.Y. 2011) ("Rule 21 grants the court broad discretion to permit the addition of a party at any stage in the litigation"). When determining whether to permit the addition of a party, courts apply the "same standard of liberality afforded to motions to amend pleadings under Rule 15." *Id.*

The decision of whether to grant a motion to amend lies within the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, the trial court may deny leave to amend "when the movant has unduly delayed in seeking leave, when it is apparent that [he] is acting in bad faith or with dilatory motive, when the opposing party will be unduly prejudiced if leave is granted or when the proposed amendment would be futile." *Gavenda v. Orleans Cnty.*, 1996 WL 685740, *2 (W.D.N.Y. 1996) (citing *Foman v. Davis*, 371 U.S. at 182). Similarly, the determination whether to allow an amendment seeking to add

---

[2] Because Luellen seeks to add a new defendant, his proposed amended complaint must also be evaluated under Rule 20(a) of the Federal Rules of Civil Procedure, which governs joinder of parties. Fed. R. Civ. P. 20(a). Hodge does not oppose the addition of Tracey Hodge to the action under Rule 20(a), and I find that Rule 20(a) is not a basis for denying the motion.

additional parties is within the discretion of the trial court. *City of Syracuse v. Onondaga Cnty.*, 464 F.3d 297, 308 (2d Cir. 2006). "Although Rule 21 'contains no restrictions on when motions to add or drop parties must be made, the timing of the motion may influence the court's discretion in determining to grant it.'" *Id.* (quoting 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, Civil 3d § 1688.1 at 510 (West 2001)). Thus, a trial court may "deny a request [to add a party] that comes so late in the litigation that it will delay the case or prejudice any of the parties to the action." *Id.*

### 1. **Timeliness of Request**

Rule 7(a)(1) of the Local Rules of Civil Procedure for the Western District of New York provides that "[a] notice of motion is required for all motions." In addition, the local rules require that certain motions, including a motion seeking leave to amend, "be supported by at least one affidavit." Rule 7(a)(3) of the Local Rules of the Western District of New York. Hodge argues Luellen did not file a proper motion for leave to amend the complaint within this Court's deadline because Luellen filed neither a notice of motion nor an affidavit. Hodge is correct that Luellen's request technically fails to comply with this District's local rules. In this matter, however, Luellen is proceeding *pro se*, and this Court docketed and treated his request as a motion seeking leave to amend. Hodge was given an opportunity to oppose the motion, and has done so. Under such circumstances, the Court will treat Luellen's request as a timely filed motion seeking leave to amend and will address the request on the merits.

### 2. **Undue Delay**

"While mere delay is insufficient to warrant denial of a Rule 15(a) motion, . . . where considerable time has elapsed between the filing of the complaint and the motion to

8

amend, the moving party has the burden to provide a satisfactory and valid explanation for the delay." *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 2004 WL 169746, *3 (S.D.N.Y. 2004) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46-48 (2d Cir. 1983)); *see Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) ("[t]he court plainly has discretion, however, to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant"); *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 112 F.R.D. 417, 421 (S.D.N.Y. 1986) ("although an unjustified delay in bringing the motion may not be reason in itself for denying it, it should be noted that plaintiffs' delay here was unjustified and serves as an additional factor militating against the motion"). Generally, "the longer the delay, the less likely it is that the moving party will be able to provide a satisfactory excuse." *See Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 2004 WL 169746 at *3 (citing *Tamari v. Bache & Co.*, 838 F.2d 904 (7th Cir. 1988)). Accordingly, "when a party fails to seek leave to amend a pleading for an inordinate amount of time even though the movant had notice of the claim, the party must provide a compelling reason to justify the delay." *New York v. Niagara Mohawk Power Corp.*, 217 F.R.D. 299, 302 (N.D.N.Y. 2003) (collecting cases).

In this case, the record demonstrates that Luellen unduly delayed seeking leave to file an amended complaint. Luellen's motion was made eighteen months after commencement of the action and approximately one month prior to the close of discovery. (Docket ## 1, 98). Luellen contends that his delay is justified because he only recently learned of facts in support of his proposed amended complaint; however, I conclude such an assertion is unavailing and is belied by the record.

9

Luellen cannot credibly argue that he did not have knowledge of facts upon which to assert a claim against his ex-wife Tracey Hodge prior to discovery of this matter. His original complaint is replete with allegations of Tracey Hodge's fraud and misrepresentation. (*See, e.g.*, Docket # 1 at ¶¶ 20-23, 31-39). Indeed, the gist of the claims against Hodge is that he conspired with his daughter to hide her assets from Luellen, the family court and the creditors. (*Id.* at ¶ 44) ("Mr. Hodge . . . schemed . . . with Ms. Hodge to open bank accounts in his name to hide her money from Mr. Luellen, courts and her creditors"). Given that the claims against Hodge arise from the alleged conspiracy between himself and his daughter, it borders on the preposterous for Luellen to assert that he did not have sufficient information to include Tracey Hodge as a defendant in the original complaint. *See Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 162 (S.D.N.Y. 2005) ("leave to amend may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading") (quoting *Priestley v. Am. Airlines, Inc.*, 1991 WL 64459, *1 (S.D.N.Y. 1991)); *Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp.*, 53 F. Supp. 2d 199, 208-09 (N.D.N.Y. 1999) ("the record belies an assertion that [p]laintiffs had even a subjective belief that there was insufficient evidence . . . to support a fraud claim[;] . . . they clearly considered their original allegations sufficient to support an assertion of fraud").

Nor does Luellen explain why the information that he purportedly discovered for the first time during discovery prompted the addition of Tracey Hodge and the assertion of entirely new claims and theories of liability. Luellen has undoubtedly acquired new information during discovery, such as the bank account numbers, transaction dates and transaction amounts,

which would allow him to allege his claims with increased specificity.[3] Indeed, considerable discovery has been conducted and Luellen was permitted to subpoena financial records from the non-party financial institutions. Yet, Luellen does not explain, and the Court is at a loss to divine, why the newly-discovered information would warrant the addition of Tracey Hodge – if the original facts did not – and a complete transformation of the legal claims asserted against Hodge. *See Credit Suisse First Boston LLC v. Coeur d'Alene Mines Corp.*, 2004 WL 2903772, *5 (S.D.N.Y. 2004) ("[t]he dishonesty of this explanation is demonstrated not only by the sequence of events pled by the defendant, but by the lack of any explanation by defendant as to what specifically it learned for the first time [which would have prompted the proposed amendments]"), *aff'd*, 2005 WL 323714 (S.D.N.Y. 2005).

In any event, even assuming that the acquisition of the newly-learned information somehow justifies the addition of Tracey Hodge and a complete recasting of the complaint, Luellen himself concedes that he learned the information in October 2011, almost an entire year before he sought leave to amend the complaint. (Docket # 112-1 at ¶¶ 67, 69). Luellen has offered no explanation for his delay in amending his complaint once he acquired the information in October 2011. *See Pkfinans Int'l Corp v. IBJ Schroeder Leasing Corp.*, 1996 WL 84481, *2 (S.D.N.Y. 1996) (finding undue delay where plaintiff "knew or should have known the relevant facts at least a year before it sought leave to file a Second Amended Complaint").

For the reasons discussed above, I conclude that Luellen has unduly delayed seeking leave to amend his complaint and that he has offered no plausible explanation for the

---

[3] Indeed, the likelihood that Luellen would acquire specific transactional information upon receipt of the records from the non-party financial institutions was the reason the Court granted Luellen's request to extend the deadline to amend the pleadings.

delay. "[A]lthough delay is a factor that weighs against the granting of a motion to amend, it is not dispositive." *Id.* Accordingly, I will address the prejudice to Hodge below.

### 3. **Prejudice**

Whether the non-moving party will be prejudiced by an amendment is among the "most important" issues to consider in determining a party's motion to amend. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am.*, 626 F.3d 699, 725 (2d Cir. 2010). According to the Second Circuit, a court must consider "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citations omitted). "The party opposing an amendment has the burden of proving that leave to amend would be prejudicial."[4] *Barnhard v. Cent. Parking Sys. of New York, Inc.*, 282 F.R.D. 284, 291 (E.D.N.Y. 2012). "The longer the delay, the less the non-movant must show to establish prejudice." *New York v. Niagara Mohawk Power Corp.*, 217 F.R.D. at 303 (citing *Block v. First Blood Assocs.*, 988 F.2d at 350).

Prejudice to the non-movant can take a variety of forms. For instance, "[o]ne of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir.), *cert. denied*, 525 U.S. 1041 (1998) (internal quotation omitted).

---

[4] Hodge did not submit his own affidavit in opposition to Luellen's motion to amend the complaint. (Docket # 115). Instead, Hodge requested that "if the Plaintiff's 'Motion' is deemed adequate without a sworn affidavit to shift the burden to Mr. Hodge to demonstrate prejudice with sworn facts, then [the Court should permit] Mr. Hodge to submit such an affidavit attesting to the facts asserted herein." (*Id.* at 12-13). To the extent Hodge wished to submit an affidavit in opposition to Luellen's request to amend, the proper time to submit the affidavit would have been at the time he filed his opposition papers, and the Court denies his request to do so now.

This is particularly true where discovery is either complete or near completion and where dispositive motions are imminent or pending. *See In re Enron Corp.*, 367 B.R. 373, 380-81 (S.D.N.Y. 2007). In addition, prejudice occurs where the non-movant "would experience undue difficulty in defending a lawsuit because of a change in tactics or theories on the part of the movant." *Cartier, Inc.*, 2004 WL 169746 at *3 (internal quotation omitted).

Thus, "[u]ndue prejudice results when a proposed complaint dramatically changes the nature of the allegations and the extent of a defendant's liability." *Pkfinans Int'l Corp. v. IBJ Schroeder Leasing Corp.*, 1996 WL 84481 at *3. While the expense of additional time, resources and effort or the reopening of discovery is not necessarily sufficient, standing alone, to warrant refusal of a request to amend, the court "should consider whether allowing the amendment would require the nonmoving party to expend significant additional resources or significantly delay the resolution of the case." *See Cartier, Inc.*, 2004 WL 169746 at *3. Such analysis necessarily requires an assessment of "not only the amount of time that passed before the movant sought to amend, but also the reasons for that delay and its practical impact on the other side's legitimate interests including both that party's ability to respond to new claims or defenses and any other prejudice flowing from a delay in the final adjudication of the case." *Credit Suisse First Boston LLC v. Coeur d'Alene Mines Corp.*, 2004 WL 2903772 at *3.

In addition to Luellen's inexplicable delay, both Hodge and Tracey Hodge will be unduly prejudiced by the proposed amendments. With respect to Hodge, I conclude that the proposed amended complaint would both significantly delay resolution of the dispute, as well as require Hodge to expend significant additional resources to conduct additional discovery and prepare for trial. First, Luellen's proposed amended complaint completely transforms the nature

of the lawsuit against Hodge after approximately two and a half years of litigation, after the resolution of countless disputes and just prior to the filing of dispositive motions. The heart of Luellen's original complaint was a civil RICO claim involving conduct during the divorce proceedings. Hodge has essentially completed the discovery relating to the claims asserted in that original complaint, has analyzed the complex legal issues raised under the RICO statute and has expended time and effort in preparing dispositive motions on that complaint. Luellen's proposed amended complaint seeks to withdraw the federal RICO claim and replace it primarily with state law claims involving transferee liability for transactions that occurred well past the divorce decree in 2005 (indeed extending over the course of the past eight years). Accordingly, allowing such an amendment, which would "dramatically alter the nature of the claim" at this stage of the litigation, would be unduly prejudicial to Hodge. *See Pkfinans Int'l Corp.*, 1996 WL 84481 at *3; *see In re Enron Corp.*, 367 B.R. at 381 ("given the amount of discovery that has been completed here . . . and that a summary judgment motion will shortly be filed, the [p]roposed [a]mendments . . . would be especially prejudicial").

Second, the addition of Tracey Hodge and the expansion of the claims would almost certainly result in additional discovery and discovery disputes that would significantly delay resolution of this litigation. Given the vastly altered claims, both parties would likely seek additional discovery in order to litigate and defend the claims. Further, the addition of Tracey Hodge, who will need to conduct her own discovery, would further delay resolution of this litigation. Indeed, Luellen has already propounded substantial discovery demands against Tracey Hodge in anticipation of her inclusion in this case. (Docket # 115 at 13-21). On this record, I conclude that the proposed amendment would "significantly delay the resolution of the dispute

and compromise [Hodge's] right to a speedy resolution of the claims against [him]," as well as place significant burdens and expense on Hodge to conduct the additional discovery and prepare for trial. *Pkfinans Int'l Corp.*, 1996 WL 84481 at *3 ("[d]ue to the additional discovery that the proposed fraud claims would undoubtedly entail, it is apparent that permitting [plaintiff] to amend its complaint at this stage of the lawsuit would significantly delay the resolution of this action"); *Zubulake v. UBS Warburg LLC*, 231 F.R.D. at 163 ("[g]iven the tortured history of the discovery in this action, there is no reason to expect this new wave of discovery to go smoothly[;] [i]t could well be months or years before this case is finally trial ready"); *Credit Suisse First Boston LLC*, 2004 WL 2903772 at *6 ("the proposed amendment would plainly necessitate a significant extension of discovery[;] . . . [a]lthough this form of prejudice is sometimes deemed an acceptable price for amendments designed to ensure that a diligent party's potentially meritorious claims or defenses are heard, there is no justification for rewarding the defendant in this case for its own irresponsibility in failing to press available claims in a timely fashion"); *Cartier, Inc.*, 2004 WL 169746 at *4 ("adding the proposed defendants represents a significant broadening of theories under which plaintiff seeks to recover").

Furthermore, undue prejudice would result to Tracey Hodge if she were brought into the lawsuit at this late stage of the litigation. *See Gavenda v. Orleans Cnty.*, 1996 WL 685740 at *3 ("undue prejudice to [nonparty] . . . would arise if this Court were to permit the plaintiff to add her as a named defendant in this litigation at this late stage"). By contrast, denial of the motion would not prejudice Luellen as he is free to commence a separate action based upon any otherwise viable claims in his proposed amended complaint. *See id.* ("plaintiff will not

[be] prejudiced inasmuch as she may bring a separate action based upon the recent and distinct developments").

In sum, having found undue delay, the absence of a satisfactory excuse and substantial undue prejudice, I deny Luellen's motion to amend his complaint.

That said, Luellen's proposed amended complaint does contain some additional factual allegations which specify bank account numbers and transactions that appear – by nature and date – to relate to the claims in the original complaint. (*See*, *e.g.*, Docket # 112-1 at ¶¶ 18-26, 29-30, 47, 51). If Luellen wishes to add those factual allegations to the original complaint without changing the nature of the claims asserted, he may do so. Thus, the denial of Luellen's request to amend is without prejudice to his filing of an amended complaint for such *limited* purpose. To the extent that Luellen wishes to file an amended complaint in accordance with that limitation, he must do so by no later than **October 30, 2013**. If Luellen elects not to file an amended complaint by that date, the original complaint shall remain the operative pleading.

## II.     MOTION FOR SANCTIONS

Luellen has filed a motion seeking a preclusion order against Hodge for his failure to comply with a prior order of the Court compelling Hodge to produce certain documents. (Docket # 117). According to Luellen, in June 2012 the Court issued a bench order that required Hodge to provide a list of documents that were responsive to Luellen's demands. (*Id.* at ¶ 4). Luellen contends that, in accordance with the Court's order, he identified documents on the list that he wanted produced and informed Hodge which documents he wanted. (*Id.* at ¶ 6). According to Luellen, Hodge never responded and has not produced the documents. (*Id.* at ¶ 6).

16

Luellen contends that the failure to produce the documents directly violates the Court's order. (*Id.* at ¶ 7). Luellen does not identify for the Court the specific documents that he contends have not been produced, nor does Luellen attach any of the communications between the parties.

Hodge opposes the motion contending that he complied with the Court's order. (Docket # 122). According to Hodge, he provided Luellen with a list as instructed by the Court. (*Id.* at ¶ 10). Hodge contends that the Court's order did not require him to produce the documents identified by Luellen. (*Id.* at ¶ 9). Hodge maintains that the documents identified by Luellen either related to his divorce proceedings with Tracey Hodge or have been previously produced. (*Id.* at ¶ 10). Hodge further maintains that the Court ordered that Hodge did not have to provide Luellen with copies of documents in connection with the divorce proceedings and instead advised Luellen to contact the Faquier County Circuit Court to obtain those documents. (*Id.* at ¶ 9). In support of his position, Hodge attached a portion of the transcript of the June 14, 2012 oral argument during which the Court orally issued its orders on numerous discovery disputes between the parties. (*Id.* at Ex. A). In reply, Luellen maintains that the Court's discussion relating to obtaining documents from Faquier County Circuit Court related to Luellen's request for a subpoena *duces tecum* and did not relate to Luellen's request for document production. (Docket # 124).

Rule 37 of the Federal Rules of Civil Procedure provides that if a party "fails to obey an order to provide or permit discovery," the court "may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). "[D]istrict courts enjoy wide discretion in sanctioning litigants appearing before them." *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 177 (2d Cir. 2008) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)). Imposition of fees for

violations of Rule 37(b) may be denied where the failure to comply was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The Court has reviewed the transcript of its prior order with respect to Luellen's document requests. (Docket # 99). In that order, Hodge was instructed to provide a log of all "documents to be used in the preparation or defense of this case." (*Id.* at 21-22). To the extent that Luellen identified any documents on the log "that he doesn't think he's seen or he doesn't know what it is," Luellen was advised that he could request those documents from Hodge. (*Id.* at 22). The Court's order did not explicitly require Hodge to produce the documents. (*Id.*). Further, the Court did not make any rulings regarding whether Hodge would be required to produce any documents relating to the divorce proceedings (as Luellen presumably has copies of his own divorce records). (*Id.*). The discussion concerning the divorce proceedings pertained to Luellen's request for a subpoena to Faquier County Circuit Court. (*Id.* at 15). During that discussion, the Court expressed the view that to the extent the documents were available from the Faquier County Circuit Court, Luellen should contact that court to obtain copies of them. (*Id.*).

With respect to the current dispute, neither party has provided the Court with a copy of the log, nor specifically identified the documents from the log that Luellen requested. A review of the docket for this matter suggests that a copy of the log was filed with the Court, (Docket # 103); however, the Court does not know which documents Luellen requested, whether he could obtain those documents from Faquier County Circuit Court or some other court, or whether the documents previously have been produced to Luellen. Under such circumstances, I direct the parties to communicate regarding (1) the specific documents from the log that Luellen seeks; (2) whether Luellen may obtain those documents from the court in which they were filed

18

or otherwise has the documents in his possession or control; and, (3) whether the documents have previously been produced by Hodge. Only following such conferral may the parties file any motions relating to any unresolved production issues.

### III.    MOTION TO STRIKE

On October 17, 2012, Luellen filed a motion to strike a memorandum of law submitted in opposition to Luellen's then-pending motion for sanctions. (Docket # 125). According to Luellen, the memorandum of law should have been stricken because it did not contain Hodge's attorney's signature and address, in violation of Rule 11 of the Federal Rules of Civil Procedure. (Docket # 125).

On March 18, 2013, this Court entered an order denying without prejudice Luellen's motion for sanctions. (Docket ## 109, 130). When entering that order, the Court inadvertently overlooked Luellen's motion to strike and thus did not address it in connection with a ruling on the motion for sanctions. The Court denied the motion for sanctions without prejudice on the grounds that Luellen had failed to establish that Hodge was obligated to preserve the records that were the subject of the motion. (Docket # 130). Considering that the Court has denied the motion for sanctions without prejudice, the Court concludes that requiring Hodge to re-file his memorandum of law with the appropriate signature and address information at this time is unnecessary. Accordingly, Luellen's motion to strike (Docket # 125) is denied as moot.

## CONCLUSION

For the reasons discussed above, Luellen's motion to amend (**Docket # 112**) is **DENIED without PREJUDICE** to the filing of an amended complaint in accordance with the limitations articulated in this decision by no later than **October 30, 2013**. If Luellen elects not to file an amended complaint by that date, the original complaint shall remain the operative pleading.

Luellen's motion for sanctions (**Docket # 117**) is **DENIED**, and his motion to strike (**Docket # 125**) is **DENIED as MOOT**.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated: Rochester, New York
        September  30 , 2013