UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SCOTT ERIC LUELLEN,

                        Plaintiff,

            v.

JOE DEAN HODGE,

                        Defendant.
_____

DECISION & ORDER

11-CV-6144P

        Plaintiff Scott Eric Luellen ("Luellen") initiated this action on March 21, 2011, asserting RICO claims and various state law claims against Joe Dean Hodge ("Hodge"). (Docket # 1). In essence, the complaint alleges that Hodge assisted his daughter in hiding assets during the pendency of her divorce proceedings with Luellen. (*Id.*). Pursuant to 28 U.S.C. § 636(c), the parties have consented to have a United States magistrate judge conduct all further proceedings in this case, including the entry of final judgment. (Docket # 20).

        Currently pending before the Court is the adequacy of Luellen's response to an Order to Show Cause why this case should not be dismissed for failure to prosecute pursuant to Rule 41(b) of the Local Rules of Civil Procedure for the United States District Court for the Western District of New York. (Docket ## 141, 142). Also pending is Luellen's motion for reconsideration of the Court's prior order denying his motion for sanctions based on Hodge's alleged spoliation of evidence, namely, bank records relating to Hodge's personal account with Charter One Financial ("Charter One" or the "Bank"). (Docket # 131).

I.  **Order to Show Cause**

An Order to Show Cause was issued on December 27, 2013, following the return of several documents mailed by the Court to Luellen due to Luellen's failure to advise the Court of his current address. (Docket # 141). By letter dated December 23, 2013, counsel for Hodge informed the Court that he believed Luellen's current address was 367 S. Negley Avenue, Pittsburgh, P.A. 15232. The Order to Show Cause was mailed to this address, as well as to Luellen's address of record. Luellen responded to the Order to Show Cause on January 22, 2014. (Docket # 142).

According to Luellen, he had made arrangements to have his mail forwarded and had submitted a change of address form to the United States Postal Service. (*Id.* at 1). Luellen contends that despite his efforts to ensure that his mail was forwarded, he did not receive any correspondence from the Court since sometime in 2012. (*Id.*). In addition, Luellen contends that Hodge's daughter had knowledge of Luellen's current address. (*Id.*). Luellen maintains that his failure to file an amended complaint by October 30, 2013, in accordance with the Court's September 30, 2013 Decision and Order, should be excused because he never received a copy of the Order until he recently discovered it online. (*Id.* at 3). Luellen now requests an additional thirty days to file an amended complaint. (*Id.*).

Hodge opposes Luellen's response to the Order to Show Cause, contending that Luellen has failed to comply with this district's Local Rules, which require Luellen to advise the court of any address changes. (Docket # 143-1 at ¶ 4) (citing W.D.N.Y. Local Rule 5.2(d)). In addition, Hodge notes that the docket reflects that Luellen notified the court of his change of address on at least one previous occasion, suggesting Luellen's familiarity with his obligations

under the Local Rules. (*Id.* at ¶ 10). Further, while maintaining that Hodge's daughter's knowledge of Luellen's address is irrelevant, Hodge contends that, in any event, his daughter was not informed of Luellen's new address until sometime in mid-December 2013. (*Id.* at ¶¶ 13-14). Finally, Hodge asserts that he would be prejudiced if the Court were to permit Luellen to amend his complaint at this stage of the litigation because he has now prepared and filed a summary judgment motion based upon the original complaint. (*Id.* at ¶ 19).

Rule 41(b) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for failure to prosecute, providing in relevant part:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). Although the rule refers to dismissal upon motion of a defendant, the Supreme Court has made clear that a court has the inherent authority to dismiss an action *sua sponte*. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962) ("[t]he authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statue but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993); *Taub v. Hale*, 355 F.2d 201, 202 (2d Cir.) (per curiam), *cert. denied*, 384 U.S. 1007 (1966). In addition, the Local Rules provide that "[i]f a civil case has been pending for more than six months and is not in compliance with the directions of the . . . Magistrate Judge, . . . the Court shall issue a written order to the parties to show cause within thirty days why the case should not be dismissed for failure to comply with the Court's

directives or to prosecute." W.D.N.Y. Local Rule 41(b).  Further, the Local Rules provide that "a *pro se* litigant must inform the Court immediately, in writing, of any change of address[;] [f]ailure to do so may result in dismissal of the case, with prejudice."  W.D.N.Y. Local Rule 5.2(d).

Dismissal is warranted under Rule 41(b) where the record demonstrates a lack of due diligence by a plaintiff in the prosecution of his lawsuit.  *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982).  Moreover, "prejudice resulting from unreasonable delay may be presumed as a matter of law."  *Peart v. City of New York*, 992 F.2d 458, 462 (2d Cir. 1993); *Charles Labs, Inc. v. Banner*, 79 F.R.D. 55, 57 (S.D.N.Y. 1978) ("[t]he operative condition on a Rule 41(b) motion is lack of due diligence on the part of the plaintiff, 'not a showing by defendant that it would be prejudiced'") (quoting *Messenger v. United States*, 231 F.2d 328, 331 (2d Cir. 1956)).  Dismissal is considered "a harsh remedy to be utilized only in extreme situations."  *See Minnette v. Time Warner*, 997 F.2d at 1027 (internal quotations omitted). Applying these standards, courts have found that dismissal of a complaint is justified when the plaintiff fails to take any specific or concrete actions over a substantial length of time.  *See*, *e.g.*, *Fischer v. Dover Steamship Co.*, 218 F.2d 682, 683 (2d Cir. 1955) (plaintiff's failure to appear for deposition noticed seven months earlier, despite court order requiring his appearance, justified dismissal for failure to prosecute); *Myvett v. Rosato*, 2004 WL 1354254, *2 (S.D.N.Y. 2004) ("[t]hat nearly a year has elapsed since [plaintiff] took any steps to prosecute this case, such as responding to outstanding discovery requests, strongly counsels in favor of dismissal"); *West v. City of New York*, 130 F.R.D. 522, 525-26 (S.D.N.Y. 1990) (plaintiff's inactivity for

nineteen months warranted dismissal for failure to prosecute) (citing *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664 (2d Cir. 1980) and other cases).

In the case at bar, there is no dispute that Luellen failed to comply with this district's Local Rules requiring him to "immediately" apprise the Court of any change of address. W.D.N.Y. Local Rule 5.2(d). Indeed, the Court would have been justified in dismissing the action for Luellen's failure to comply with Local Rule 5.2(d) instead of issuing an Order to Show Cause. *See Gomez-Ka'Dawid v. Wright*, 2013 WL 1103208, *3 (W.D.N.Y. 2013). In this case, however, upon notice that he risked dismissal of the action, Luellen promptly and timely responded to the Order to Show Cause and indicated his desire to continue the prosecution of this matter. On this record, I find that Luellen's actions do not demonstrate the level of prosecutive delinquency justifying dismissal. *Butler v. Conway*, 2013 WL 3777145, *2 (W.D.N.Y. 2013) (granting reconsideration of dismissal of plaintiff's action for failure to notify the court of his change of address where plaintiff sought reconsideration upon notification that the matter had been dismissed). Luellen's case will therefore be permitted to proceed. Luellen is cautioned that any future incidents of prosecutive delinquency or non-compliance with the Court's rules or deadlines may result in sanctions, including the dismissal of any or all of his claims.

Luellen's request for an extension of time to amend his complaint is not properly before the Court. Such a request, particularly where it is opposed, may not be made in a response to a show cause order, but must instead be made through a formal motion seeking such relief. In any event, I agree with Hodge that it would be unduly prejudicial to permit Luellen to file an amended complaint at this stage of the litigation. Although Luellen did not receive a copy of the Court's Decision and Order permitting a limited amendment provided that it was filed no later

5

than October 30, 2013, his failure to receive a copy was solely of his own making and a direct result of his failure to notify the court of his address change. On this record, Luellen has not shown good cause for the extension requested. Further, in compliance with the Court's scheduling order requiring the filing of dispositive motions by December 16, 2013 in the event that Luellen did not file an amended complaint, and in reliance of Luellen's failure to file an amended complaint, Hodge prepared and filed a summary judgment motion. (Docket ## 138, 140). Under these circumstances, I deny Luellen's request for an extension of time to file an amended complaint. *See Cohen v. Greenberg*, 2010 WL 4159628, *3 (S.D.N.Y. 2010) ("[b]ecause the plaintiff has failed to show good cause, the motion for leave to amend is denied").

## II.     Motion for Reconsideration

### A.     Factual Background

In its prior order, this Court denied Luellen's motion for sanctions on the ground that Luellen had failed to provide sufficient information to permit the Court to determine whether Hodge was obligated to preserve the records, and if so, when that obligation arose. (Docket # 130). Luellen seeks reconsideration of that Order, contending that the record does establish when Hodge became aware that Luellen was seeking records from his personal bank account. (Docket # 131). Hodge opposes the motion. (Docket # 134).

According to Luellen, Hodge was put on notice that the records were relevant to this litigation in at least two different ways: first, on September 15, 2011, when Hodge was served with Luellen's interrogatories that requested information relating to bank accounts in

Hodge's name (Docket # 131 at 1-2); and, second, on some date prior to December 14, 2011, when Hodge filed a motion for a protective order requesting that the Court quash a subpoena directed to Charter One (*id.* at 2). According to Luellen, the fact that Hodge sought a protective order quashing a subpoena for the records necessarily demonstrates Hodge's knowledge that Luellen was seeking the records. (*Id.*). In addition, Luellen claims that in filings dated February 27, 2012, Hodge made statements indicating his awareness of Luellen's pursuit of information regarding Hodge's personal accounts. (*Id.* at 2-3).

Luellen's spoliation motion is premised on the assumption that if Hodge had directed Charter One to preserve his records when he was served with the interrogatories in September 2011, records for the period September 2004 through January 2005 would not have been destroyed in accordance with the bank's record retention policy.[1] (*Id.* at 4). Similarly, if Hodge had directed the preservation on or about December 14, 2011, when he sought a protective order to quash the subpoena, records for the period December 14, 2004 through January 2005 would not have been destroyed. (*Id.*).

The Court has reviewed the materials cited by Luellen and concludes that the interrogatories referenced by Luellen fail to give rise to a duty to preserve records from Hodge's Charter One personal bank account. I cannot find that these exceptionally overbroad and burdensome interrogatories, which do not specifically seek production of Charter One records, create a duty to preserve Charter One bank records.

---

[1] The Court previously rejected Luellen's contention that records after January 2005, when the divorce decree became final, are relevant and subject to production. (Docket # 97).

I reach a different conclusion with respect to Hodge's motion for a protective order.[2] I agree with Luellen that the fact that Hodge sought a protective order for Charter One account records necessarily implies that Hodge knew that Luellen was seeking to subpoena them. (Docket # 41). Unfortunately, Luellen did not cite the motion for a protective order in connection with his previous spoliation motion. (Docket # 109). Thus, the Court overlooked those proceedings when it rendered its previous decision and will reconsider its previous ruling.

Having reviewed the filings in connection with the motion for a protective order and the transcript of the proceedings before the Court on that motion, I conclude that on or about December 14, 2011, Hodge knew that Luellen was seeking to obtain Hodge's Charter One records. (Docket ## 41, 53, 61, 97, 99). This conclusion requires an analysis of whether such knowledge triggered a duty to preserve the account records and, if so, whether Hodge's failure to do so warrants sanctions.

B. **Discussion**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685

---

[2] In his opposition, Hodge contends that the Court "essentially already rejected the Plaintiff's effort to remedy the document deficiency merely by arguing that Mr. Hodge's motion for a protective order indicates that he received some version of the subpoena." (Docket # 134). The Court disagrees with Hodge's interpretation of the Court's prior order, which did not address the motion for a protective order.

F. Supp. 2d 456, 465 (S.D.N.Y. 2010), *abrogated on other grounds by*, *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1724 (2013); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 135-36 (2d Cir. 1998)); *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("[w]hether exercising its inherent power or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses"), *cert. denied*, 528 U.S. 1119 (2000).

A party bringing a spoliation motion must demonstrate that: (1) the party charged with destroying the evidence had an obligation to preserve it; (2) the records were destroyed with a "culpable state of mind"; and, (3) the destroyed evidence was relevant to the party's claim or defense. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d at 107 (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107-08 (2d Cir. 2001)); *see also Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

### 1. **Duty to Preserve**

"Identifying the boundaries of the duty to preserve involves two related inquiries: *when* does the duty to preserve attach, and *what* evidence must be preserved?" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. at 216 (emphasis in original). A party is obligated to preserve evidence when it has "notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir.), *cert. denied*, 534 U.S. 891 (2001); *Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 105 (E.D.N.Y. 2002). Once the duty to

preserve has attached, a party should institute a litigation hold and "suspend its routine document and retention/destruction policy." *Toussie v. Cnty. of Suffolk*, 2007 WL 4565160, *7 (E.D.N.Y. 2007) (quoting *Zubulake*, 220 F.R.D. at 218).

The fact that the documents were in the custody of a non-party is not determinative because Hodge's duty to preserve extends to documents in the possession of third parties so long as Hodge had control over the documents. *See GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 355 (S.D.N.Y.) (plaintiff had a duty to preserve documents in the possession of non-party consultant because the documents were in the practical control of the plaintiff), *report and recommendation adopted*, 2012 WL 1849101 (S.D.N.Y. 2012); *Babaev v. Grossman*, 2008 WL 4185703, *3 (E.D.N.Y. 2008) (defendants had sufficient "control" over their bank records to trigger their duty to preserve them); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y.) (defendant "had both the legal 'right' and certainly the 'practical ability' to obtain the relevant documents . . . , and therefore had the necessary 'control' of those documents to be able to preserve . . . them"), *report and recommendation adopted*, 2007 WL 1518632 (S.D.N.Y. 2007).  Further, the fact that Luellen sought the documents through a non-party subpoena rather than a document request to Hodge does not alter the analysis. *See Fairview Ritz Corp. v. Borough of Fairview*, 2013 WL 163286, *5 (D.N.J.) (plaintiff's duty to preserve documents in non-party accountant's possession was triggered by subpoena to accountant), *reconsideration granted in part on other grounds*, 2013 WL 5435060 (2013); *see GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. at 355-56 (plaintiff had a duty to preserve, but not to produce, documents in possession of non-party where defendant issued a non-party subpoena for the documents).

In this case, Luellen has not come forward with any evidence, such as an account agreement, to establish that Hodge had legal control over his bank account records in the possession of Charter One. Nevertheless, a common sense understanding of the relationship between an account holder and a financial institution leads me to conclude that Hodge had sufficient control over the documents to be able to direct their preservation. *See GenOn Mid-Atlantic, LLC*, 282 F.R.D. at 355 ("[a]lthough there is no direct evidence that [plaintiff] could have obtained [consultant's] audit-related materials merely by asking for them, or that [the consultant] necessarily would have honored a request by [plaintiff] that they be preserved, common sense suggests that this is likely"); *Babaev v. Grossman*, 2008 WL 4185703 at *3 ("[t]here is no basis for finding that the defendants lacked sufficient control over their bank records to obtain them"). As discussed above, I conclude that Hodge's duty to preserve arose on or about December 14, 2011, the date he filed a motion to quash the non-party subpoena to Charter One. At that time, Hodge should have contacted Charter One to request preservation of records responsive to the subpoena. It is reasonable to assume that Hodge's failure to do so resulted in the Bank's destruction of records pursuant to its document retention policy.

2. **Culpability**

"[A] finding of bad faith or intentional misconduct is not a *sine qua non* to sanctioning a spoliator." *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d at 268. Rather, a finding of gross negligence will satisfy the "culpable state of mind" requirement, as will knowing or negligent destruction of evidence. *Id.*; *Residential Funding Corp.*, 306 F.3d at 108 ("[t]he sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence");

11

*Zubulake*, 220 F.R.D. at 220 ("a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence").

A discovery request triggers the duty to preserve. *See LaMarca v. United States*, 31 F. Supp. 2d 110, 127 (E.D.N.Y. 1998) ("[a] party is on notice 'once it has received a discovery request"). "Once the duty to preserve attaches, any destruction of evidence is, at a minimum, negligent." *Zublake*, 220 F.R.D. at 220-21. When the duty to preserve arises, the failure to institute a litigation hold or suspend document destruction practices does not constitute *per se* gross negligence. *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d at 62. Instead, "the better approach is to consider [the failure to adopt good preservation practices] as one factor in the determination of whether discovery sanctions should issue." *Id.* (internal quotation omitted) (alteration in original); *see GenOn Mid-Atlantic, LLC*, 282 F.R.D. at 357 (a categorical approach is inappropriate because the particular circumstances of the case may warrant a finding of negligence rather than gross negligence).

Here, there is no evidence that Hodge was aware of Charter One's document retention policy, let alone that he knowingly exploited it. Further, although the Court eventually determined that the Charter One account records potentially contained relevant information (Docket # 97), the Court noted that the relevance of the account records was not apparent at the outset of the litigation because the claims asserted in the complaint do not identify the Charter One account. (Docket # 130 at 3). Moreover, the bulk of the account records from the relevant time frame were destroyed pursuant to Charter One's document retention policy well before Luellen commenced this litigation. Under these circumstances, I conclude that Hodge's failure to instruct Charter One to preserve his account records when he received notice of Luellen's

requested subpoena constituted negligence (rather than gross negligence or bad faith), which is sufficient to permit the imposition of sanctions. *See GenOn Mid-Atlantic, LLC*, 282 F.R.D. at 357. Thus, I turn next to the question of the appropriate sanction to be imposed.

### 3.    Appropriate Sanctions

Under Rule 37 of the Federal Rules of Civil Procedure, courts have broad discretion to sanction a party for failing to produce or destroying relevant and discoverable evidence. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779 (discussing court's authority to impose sanctions under Fed. R. Civ. P. 37 where a party destroys evidence in violation of a court order or under the court's inherent power in the absence of an order); *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d at 436; *Residential Funding Corp.*, 306 F.3d 99 at 107. Available sanctions include, *inter alia*:  (1) an adverse inference jury instruction; (2) a preclusion order; (3) an order striking all or part of the pleadings; and, (4) an order dismissing all or part of the action. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi); 37(c)(1)(c). In addition to the sanctions set forth under Rule 37(b), Rule 37(c) authorizes sanctions of attorney's fees or notice to the jury of a party's failure to provide information. Fed. R. Civ. P. 37(c)(1).

Although a finding that the moving party has been prejudiced is not a prerequisite to the imposition of sanctions, *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*, 212 F.R.D. 178, 229 (S.D.N.Y. 2003), *adhered to on reconsideration by* 2004 WL 1943099 (2004), before awarding "'more severe sanctions – such as dismissal, preclusion, or the imposition of an adverse inference – the court must consider . . . whether the innocent party has suffered prejudice as a result of the loss of [relevant] evidence.'" *Williams v. New York City Transit Auth.*, 2011 WL 5024280, *8 (E.D.N.Y. 2011) (quoting *Pension Comm.*

*of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d at 467). Proof of prejudice in this context refers to evidence from which a "reasonable trier of fact could infer that the . . . unavailable evidence would have been of the nature alleged by the party affected by its destruction." *See Residential Funding Corp.*, 306 F.3d at 109; *Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 178 (E.D.N.Y. 2009) ("where more severe sanctions are at issue . . . the moving party must show that the lost information would have been favorable to it") (quoting *Chan v. Triple 8 Palace, Inc.*, 2005 WL 1925579 at *8). Where the evidence has been destroyed or lost through bad faith or "egregious" gross negligence, an inference may be drawn that the missing evidence was unfavorable to the culpable party. *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 438-39 (S.D.N.Y. 2010) (citing *Residential Funding Corp.*, 306 F.3d at 109; other citations omitted).

As with many fact-bound determinations, "[t]he determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Fujitsu Ltd.*, 247 F.3d at 436 (internal citation omitted). As the Second Circuit has observed:

> [T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the doctrine. The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.

*West*, 167 F.3d at 779 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)) (internal quotation and citation omitted).

In this case, Luellen seeks the following sanctions: (1) an adverse inference that the Charter One account records would have established that Hodge used the account to hide his daughter's assets from Luellen; (2) an award of $18.00, representing the costs and expenses incurred by Luellen in connection with the filing of his motion for spoliation sanctions; and, (3) an instruction by the Court to Hodge that any further violation of his discovery obligation will result in the "striking [of his] answer and ent[ry] of a default judgment." (Docket # 109 at 1).

Adverse inference and preclusion sanctions are severe sanctions that should be reserved for egregious conduct or for situations in which the loss of the relevant evidence has so prejudiced the moving party that preclusion or an adverse inference is necessary to restore the moving party to its pre-loss position. *See*, *e.g.*, *Residential Funding Corp.*, 306 F.3d at 112 (instructing district court on remand to consider monetary sanctions in lieu of adverse inference instruction if no prejudice is found); *West*, 167 F.3d at 780 (an order of preclusion may serve to remedy prejudice suffered from spoliation); *Brown v. Coleman*, 2009 WL 2877602, *3 (S.D.N.Y. 2009) (precluding expert from presenting certain evidence in support of his qualifications as sanction for destroying documents because such a sanction would "mitigate any prejudice to [d]efendants resulting from [their] destruction"); *Toussie*, 2007 WL 4565160 at *9 (declining to order adverse inference instruction where the movant had "not sufficiently demonstrated that the destroyed/lost emails were favorable" to its case); *De Espana v. Am. Bureau of Shipping*, 2007 WL 1686327, *8 (S.D.N.Y. 2007) (same).

Severe sanctions are not warranted in this case because Luellen has not shown either that Hodge's failure to preserve the Charter One account records stemmed from bad faith or egregious gross negligence, or that he has been prejudiced by the loss of the account records.

15

As discussed above, while Luellen has established that Hodge was negligent in failing to direct the Bank to preserve the records, he has not shown that the account records contained information relevant to his claims. In my estimation, it would be inappropriate to impose an adverse inference on this record. *See GenOn Mid-Atlantic, LLC*, 282 F.R.D. at 360 (denying sanctions where defendants failed to establish prejudice); *Crown Castle USA Inc. v. Fred A. Nudd Corp.*, 2010 WL 1286366, *17 (W.D.N.Y.) ("an adverse inference instruction may not be appropriate where the destruction of evidence has not prejudiced the movant"), *report and recommendation adopted*, 2010 WL 4027780 (W.D.N.Y. 2010); *Great N. Ins. Co. v. Power Cooling, Inc.*, 2007 WL 2687666, *11 (E.D.N.Y. 2007) (where evidence was destroyed through ordinary negligence, "there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party"). Although I decline to impose the more serious sanctions proposed by Luellen, I do find that the requested monetary sanction of $18.00 is appropriate in order to reimburse Luellen's fees and costs associated with his spoliation motion. (Docket # 109).

**CONCLUSION**

Accordingly, Luellen's motion for reconsideration **(Docket # 131)** is **GRANTED in part and DENIED in part** as set forth herein.  Hodge is directed to reimburse Luellen's costs and expenses in the amount of $18.00 on or before **April 30, 2014**.

**IT IS SO ORDERED.**

                                            *s/Marian W. Payson*
                                             MARIAN W. PAYSON
                                           United States Magistrate Judge

Dated:  Rochester, New York
       March   28   , 2014